IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TIM BURDEX,**

        **Plaintiff,**

vs.                                            **No.  01cv0875 JHG**

**JOANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's (Burdex's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 9]**, filed July 1, 2002.  The Commissioner of Social Security issued a final decision denying Burdex's application for supplemental security income.   Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

Burdex, now thirty-one years old, filed his application for supplemental security income on September 8, 1999, alleging disability since at least March 1, 1999, due to a shoulder, arm, back and neck injury at birth (probable brachial plexus injury at birth). Tr. 97, 126.  Burdex has a tenth grade education and no past relevant work.  On September 27, 2000, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding that Burdex's impairments involving his left upper extremity were severe but did not singly or in combination meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1. The ALJ further

found Burdex retained the residual functional capacity (RFC) to perform a significant range of light work with restrictions in his left upper extremity.  Tr. 18, 19, 21.  As to his credibility, the ALJ found Burdex's testimony was not wholly credible.  Tr. 15.  Burdex filed a Request for Review of the decision by the Appeals Council.  On June 21, 2001, the Appeals Council denied Burdex's request for review of the ALJ's decision.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Burdex seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*,  987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Burdex makes the following arguments: (1) the ALJ erred in finding his learning disability to be nonsevere; and (2) the vocational expert (VE) testimony does not provide substantial evidence to support the finding of nondisability.

The ALJ found there was "some documentation" regarding a possible learning disorder. However, the ALJ concluded there was "a lack of sufficient evidence" in the record to find Burdex had a learning disability.  Tr. 15.  Accordingly, the ALJ found Burdex had not met his burden of proving he had a severe mental impairment.

Burdex contends the ALJ should have requested his school records in order to develop the record regarding his learning disability.  Therefore, Burdex moves the Court for an order remanding the case for further development of the record regarding this issue.  The burden to prove disability in a social security case is on the claimant.  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).  However, the Court also recognizes the ALJ has a basic duty of inquiry to fully and  fairly develop the record as to material issues.  *Baca v. Dep't of Health and Human Servs.,* 5 F.3d 476, 479-80 (10th Cir. 1993).  "This duty exists even when the claimant is represented by counsel." *Id.*  However, the claimant must in some fashion raise the issue sought to be developed, *see Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 ( 10th Cir. 1993), which, on its face, must be substantial, *see Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991).  Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

In this case, Burdex mentioned he had a learning disability when he completed the agency's "Disability Report Adult" but indicated he had not attended special education classes.

4

Tr. 103.  Burdex signed this form on September 10, 1999.  Tr. 105, *see also* Tr.110, 113.  At the administrative hearing, Burdex testified he was in a D-Level Special Education class when in school.  Tr. 38, 39.  Burdex also testified he could read, write and speak English.  Tr. 38.  Burdex did not present sufficient evidence to "suggest a reasonable possibility that a severe impairment exists."   Moreover, based on the record as a whole, in particular Burdex's testimony, the Court finds it unnecessary to remand for further development of the record, because in response to the ALJ's hypothetical which included Burdex's limited education, the VE testified Burdex was able to perform substantial gainful activity.

The ALJ's hypothetical question to the VE included a "younger person with limited education, no past relevant work, able to lift or carry 20 pounds occasionally and 10 pounds frequently, able to stand and walk unimpaired for up to six or eight hours, sitting for six of eight hours, no overhead reaching or handling of objects, limited in reaching in all directions including overhead."  Tr. 54-57.  In response to this hypothetical question, the ALJ responded that there were jobs for this individual.  The VE testified Burdex could perform the jobs of gate guard, DOT No. 372667030, and usher, DOT No. 344677014.  The VE testified there were 5,000 gate guard positions regionally and 60,000 nationally and 1,500 usher jobs regionally, and 20, 000 nationally.  Tr. 57.

Burdex contends the VE erred in classifying the job of gate guard as unskilled.  The Commissioner concedes that the job of gate guard is semi-skilled.  However, the Commissioner argues Burdex can perform the job of usher, which is considered unskilled.  Plaintiff argues the ALJ's RFC determination excluded all reaching, fingering and gross manipulation which would eliminate the job of usher.  However, as the Commissioner points out, Dr. Toner, an Occupational

5

Medicine specialist and the agency's medical consultant, evaluated Burdex on November 5, 1999, and found "He does have a significant problem with his left shoulder girdle, and there is atrophy even to the pectoralis minor muscle on the left side and I do not feel that he can lift over twenty pounds or do any overhead work.  He certainly would have problems handling objects or doing fine manipulation **with his left arm only**."  Tr. 126, *see also* Tr. 130.   Dr. Toner also found no evidence Burdex would have any problems as far as walking, sitting, or standing.  *Id., see also* Tr. 129, 130.

Relying on Dr. Toner's evaluation, on November 15, 1999, the DDS physician completed an RFC assessment form and determined Burdex was limited in his upper extremities.  Tr. 134-140.  In support of his RFC determination, the physician noted:

> This 28 yr old man appears to have had a L brachial plexus injury at birth by history.  The result is very poor strength & function of L upper extremity including the hand.  Recent 11-99 CE reported the residual sequelae compatible with brachial plexus injury including 0 strength in L shoulder girdle, decreased ROM at L shoulder with elevation 25 degrees (150 NL) and abduction 20 degrees (150 NL), decreased L elbow ROM or 40-90 degrees (1-150 NL) with no supination or pronation, no ROM at L wrist, poor 1/5 L hand grip, and significant atrophy of L upper extremity.  **Claimant is R hand dominant and R upper extremity was normal.**

Tr. 134.  Moreover, the ALJ cited to Dr. Toner's evaluation and the DDS physician's RFC assessment form and noted in his decision "the claimant has not been able to handle objects or do overhead work with his left upper extremity.  However, the claimant had no functional limitations in performing these work activities with his right upper extremity."  Tr. 18, 19.  The ALJ then found Burdex retained a residual functional capacity for a significant range of light work on a sustained basis.  Tr. 20.  Substantial evidence supports this finding.  The  ALJ's findings that

Burdex is not disabled and can perform the job of usher also are supported by substantial evidence.

A judgment in accordance with this Memorandum Opinion will be entered.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE